CHARLES E. PATTERSON, as Receiver, etc., Appellant, *v.* DANIEL ROBINSON et al., Respondents.

Where a contract, made in the name of a corporation by its president, is one the corporation has power to authorize its president to make, or to ratify after it has been made, the burden is upon the corporation of showing that it was not authorized or ratified.

On May 1, 1887, the S. W. mill, a manufacturing corporation, was indebted to the M. and M. Bank in the sum of $300,766.   At that date V., who was president both of the bank and the mill company, assuming to act for both, entered into an oral contract with R., a trustee of the latter, to the effect that the amount then due to the bank should be treated as "a dead or suspended debt;" that V., as president of the mill company, should make drafts upon its treasurer which, after acceptance by him, should be indorsed by V. and R. individually, and that they should, individually, guarantee other paper; that such drafts and other paper should be used in carrying on the business of the mill, the proceeds of its manufactures to be applied in payment of labor and current expenses, and of such paper, and no part thereof, to the old

or suspended debt until all outstanding subsequent claims were paid. The business of the mill was thereafter carried on under this contract; the paper so indorsed and guaranteed was presented to and paid by the bank, but, instead of canceling and charging it to the account of the mill company it was held as a liability by the bank, and the old indebtedness was charged up. No notice of the dishonor of this paper was given to the indorsers. The bank failed in October, 1878. At that time the old indebtedness had been all paid, and the bank had in its possession the paper of the mill company made since May 1, 1875, and indorsed by V. and R. to an amount $169,361 in excess of its capital stock. In an action against the trustees of the mill company to recover such excess under the provision of the manufacturing act (Laws of 1848, § 23, chap. 40), declaring that, when the indebtedness of a corporation, organized under it, shall exceed its capital, the trustees assenting thereto shall be personally liable for such excess, *held*, that the paper so made by the mill and paid by the bank after May 1, 1875, was, as to the defendants, paid; and, therefore, no cause of action was established against them.

Defendant R. was the only one of the defendants who was trustee prior to May 1, 1875, as to him the referee found that he did not assent to the creation of the debt to the bank existing at that date. To this finding there was no exception, nor was there any request to find the converse of such finding. It did not appear that the case contained all of the evidence. *Held*, the court must presume that the finding was sustained by the evidence.

(Argued June 20, 1889; decided October 8, 1889.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 21, 1888, which affirmed a judgment in favor of defendant, entered on the report of a referee.

Since 1865 the "Schaghticoke Woolen Mill" has been a manufacturing corporation, duly incorporated under chapter 40 of the Laws of 1848, with a capital stock of $250,000. Its affairs have been managed by five trustees. Daniel Robinson was a trustee from its organization until its failure, in November, 1878; and James E. Pinkham was superintendent of the mill from 1866 until its failure, and June 18, 1878, he also became a trustee and treasurer of the corporation, and so remained until its failure. For several years before May 1, 1875, the woolen mill kept its account with the Merchants and Mechanics' Bank of Troy; and, under mutual arrangement, the bank paid the checks and

commercial paper of the mill when presented, without regard to the state of its bank account. When the account showed a balance to the credit of the mill, the previously paid checks would be first charged to the account, and after they were charged the oldest past-due commercial paper was charged as rapidly as it could be without causing an apparent overdraft. Checks and paper paid when the account was not good were carried by the bank as cash items until they were charged up. May 1, 1875, the mill owed the bank $300,776, which was $50,776 in excess of its capital stock, and it was owing other creditors such sums that the indebtedness then exceeded its capital stock by more than $185,000. At this date D. Thomas Vail was the president, and a director of the bank, and the president and a trustee of the mill. On the date last mentioned, Mr. Vail, assuming to act as president for both corporations, entered into the following oral contract with Daniel Robinson:

"That the debt of the Schaghticoke Woolen Mills, then due to the Merchants and Mechanics' Bank of Troy, should be treated as dead or suspended debt; that said Vail, as president of the woolen company, should make drafts on the treasurer of said company, which, after acceptance by him, should be indorsed by Vail and Robinson, individually; that they should also, individually, guarantee other paper of said company when advisable, which paper, so indorsed and guaranteed, should be used in the purchase of wool for the mills in manufacturing cloth; that such wool, and the cloth manufactured therefrom, should be the property of Vail and Robinson until the cloth was disposed of, and that the proceeds thereof should be applied to the payment of the supplies, labor and current expenses of the mills and of the paper so indorsed and guaranteed; and no part of such proceeds were to be applied to the payment of the old or suspended debt held by the bank until all outstanding claims for such paper, supplies, labor and current expenses were satisfied."

Between May 1, 1875, and November 1, 1878, the business of the mill was carried on under this contract, Vail and

Robinson indorsing, for the accommodation of the mill, such paper as it made in the course of its business. This paper was presented to and paid by the bank; but instead of canceling and charging it to the account of the mill, the bank held the paper as a liability against the mill. No notice of the dishonor of this paper was given to the indorsers. After May 1, 1875, the bank charged to the account of the mill its current checks, but instead of charging to its account its commercial paper made and paid after that date, it charged up to the account as rapidly as could be done without producing an apparent overdraft, the indebtedness which had accrued prior to May 1, 1875; so that when the bank failed the debt ($300,776) existing May 1, 1875, had been wholly paid, and the bank had in its possession the commercial paper of the mill, made and paid since May 1, 1875, to the amount of $419,361, which had been indorsed by Vail and Robinson. October 31, 1878, the bank failed, and November 27, 1878, the plaintiff was duly appointed its receiver. In November, 1878, the woolen mill failed and Mr. Julliard was appointed its receiver. The receiver of the bank found this commercial paper of the mill, representing $419,361, and January 24, 1879, began this action to recover of the trustees of the mill the sum by which its indebtedness exceeded its capital stock, upon the ground that they were liable for the excess, under the twenty-third section of chapter 40, Laws 1848, which provides:

" § 23. If the indebtedness of any such company shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and individually liable for such excess to the creditors of such company."

*E. Countryman* for appellant. The referee and General Term erred in holding that the defendant Robinson did not assent to the indebtedness of the company incurred, in excess of its capital stock, prior to May 1, 1875. (*Clem* v. *State*, 33 Ind. 431, 432; *In re Preston*, 119 Mass. 404; *Day* v. *Caton*, Id. 515, 516; *In re Kent*, 78 N. Y. 187; *Selleck* v. *Selleck*, 19 Conn. 505; 3 R. S. [8th ed.] 1960, § 23; *Hudler*

v. *Golden*, 36 N. Y. 447; *Holmes* v. *Conley*, 31 id. 289; *Ayres* v. *Lawrence*, 59 id. 192, 196; Endlich on Statutes, §§ 107, 333; *Neal* v. *Briggs*, 12 Ga. 109, 113; *Banks* v. *Dodden*, 18 id. 318–335; *In re Wood*, 56 Conn. 87, 96; Laws of 1875, chap. 611, § 22; *In re Cornwell*, 2 Bush. 563, 564.) Vail, as president of the bank, had no authority from the directors, and no power by virtue of his office, to make the agreement. (Morse on Banks [2d ed.] 146–149, 156, 157; *Hodge's Case*, 22 Gratt. 51, 58–61; *W. C. Bank* v. *F. L. T. Co.*, 14 Wis. 325; *Bliss Case*, 65 Cal. 502; *Jackson Case*, 102 Penn. 269; *Asher* v. *Sutton*, 31 Kan. 286; *Olney* v. *Chadsey*, 7 R. I. 225; *Spyker* v. *Spence*, 8 Ala. 333; *Bank of U. S.* v. *Dunn*, 6 Pet. 51; *Titus Case*, 37 N. J. L. 98; *Stokes Case*, 46 id. 237; *Brower* v. *Appleby*, 1 Sandf. 159; *Hoyt* v. *Thompson*, 5 N. Y. 320; *Rhodes* v. *Webb*, 24 Minn. 292; *Claflin Case*, 25 N. Y. 293; *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 14 id. 85; *Murray* v. *Beard*, 102 id. 505; *U. S.* v. *City Bk.*, 21 How. [U. S.] 356; *Coats* v. *Donnell*, 94 N. Y. 168, 176; *Perkins Case*, 29 id. 554; *Ogden* v. *Murray*, 39 id. 202, 204, 205; *Butts* v. *Wood*, 37 id. 317; *Coleman Case*, 38 id. 201; *Kelsey* v. *Sargent*, 40 Hun, 151; *McCullough* v. *Moss*, 5 Denio, 567.) The liability which attached to the trustees, immediately upon the creation of the debt, attached to the paper given in payment of the debt and followed the paper wherever it went. (*Corning* v. *McCullough*, 1 N. Y. 55; *Patterson* v. *Robinson*, 36 Hun, 626, 627.) When the debt exceeds the capital stock, the directors or trustees assenting to such excess become personally liable, not on account of a penalty incurred, but because, under the statute, when such excess arises the trustees thus assenting are liable as contractors. (*Robinson* v. *Smith*, 3 Paige, 232; *Corning* v. *McCullough*, 1 N. Y. 42, 53; *Allen* v. *Sewell*, 2 Wend. 338; *Ex parte Van Riper*, 20 id. 614; *Moss* v. *Oakley*. 2 Hill, 265, 269; *Barley* v. *Banker*, 3 id. 188; *Harger* v. *McCullough*, 2 Den. 119, 123; *Patterson* v. *Robinson*, 36 Hun, 626; *Slee* v. *Blume*, 20 Johns. 634; *Wiles* v. *Surdam*, 64 N. Y. 176; *Van Hook* v. *Whitlock*, 3 Pai. 409; *Bank of Poughkeepsie* v.

*Ibbotson,* 24 · Wend. 479; *Weeks* v. *Love,* 50 N. Y. 358; *Rochester* v. *Barnes,* 26 Barb. 664; *Moss* v. *McCullough,* 7 id. 279; *Story* v. *Furman,* 25 N. Y. 223.)

*Esek Cowen* for respondent. The contract bound both the bank and the woolen mill. (96 N. Y. 644.) Robinson did not consent to the creation of the debt upon which this action was brought. (*Lancey* v. *Clark,* 64 N. Y. 209.)

FOLLETT, Ch. J. The plaintiff asserts that the claims, amounting to $300,776, held by the bank against the mill on the 1st day of May, 1875, have been fully and legally paid; and that between May 1, 1875, and the date of the failure of the bank, a new indebtedness, amounting to $419,361, was incurred by the mill to the bank with the assent of the defendants, and that they are liable to the receiver of the bank for the sums by which the indebtedness exceeds the capital stock of the mill.

The referee found as a fact:

"VIII. That to the creation of the debt of the Schaghticoke Woolen Mills to the Merchants and Mechanics' Bank of Troy, existing on the 1st day of May, 1875, or to any part thereof, the defendant, Daniel Robinson, did not assent."

As a conclusion of law: "I. That neither of the defendants are liable for any part of the indebtedness of the Schaghticoke Woolen Mills in excess of its capital stock exising on the 1st day of May, 1875." The plaintiff insists that the eighth finding of fact is without any evidence tending to sustain it, that it is a ruling upon a question of law, and that the referee erred in finding it, and the General Term in sustaining it. If the plaintiff's position is, in fact, well taken, he should have excepted to the eighth finding, pursuant to section 993 of the Code of Civil Procedure. (*Brush* v. *Lee,* 36 N. Y. 49, 53; *Gidley* v. *Gidley,* 65 id. 169, 171; *Sickles* v. *Flanagan,* 79 id. 224; *Mead* v. *Smith,* 28 Hun, 639.) But no exception was taken to this finding, nor was an exception taken to the conclusion of law above quoted, which seems to be a sequence to the finding of fact above quoted. Neither

did the plaintiff request the referee to find the converse of this finding of fact, pursuant to section 1023 of the Code of Civil Procedure. It does not appear that the case contains all of the evidence or all bearing upon the eighth finding; and on such a record this court must presume that the finding was sustained by the evidence. (*Porter* v. *Smith,* 107 N. Y. 531; *Cox* v. *James,* 45 id. 557.) However, it is quite unnecessary to determine whether Robinson assented, within the meaning of the section, to the creation of the debts existing May 1, 1875, for the referee finds, as a fact, that on that date he knew the amount of the indebtedness then outstanding, and, as a conclusion of law, that he assented, within the meaning of the section, to the creation of all debts which were incurred by the mill after that date. The other defendant, Pinkham, did not become a trustee until June 18, 1878, and was without power to assent or dissent, within the meaning of the section, to the creation of the debts incurred before that date, but he knew the amount of the indebtedness outstanding June 18, 1878, and assented, within the meaning of the section, to the creation of all debts which were incurred by the mill after that date. Thus the liability of the defendants depends upon whether the commercial paper found in the bank after its failure, and amounting to $419,361, was then an existing indebtedness in favor of the bank, and against the defendants. Had this paper remained unpaid in the hands of the person to whom it was given, the liability of the defendants, as assenting trustees for the excess could not have been successfully denied.

The referee does not find whether the existence of the contract of May 1, 1875, was known or unknown to the boards of the two corporations, nor is it disclosed by the evidence; but it does appear that the board of directors of the bank consisted of four members, D. Thomas Vail, a director and president; Charles R. Church, a director and vice-president; Francis Sims, a director and cashier. The name of the fourth director does not appear. Church was a partner of Robinson and an indorser on some of the paper made by the mill after

May 1, 1875. The board of trustees of the mill consisted of five members, D. Thomas Vail, a trustee and president; Daniel Robinson, a trustee; Chester Griswold, a trustee; William Howard Hart, a trustee; and Thomas A. Knickerbacker, a trustee from May 1, 1875, to June 18, 1878, when James E. Pinkham succeeded Knickerbacker as a trustee, and from that date until the failure of the mill its trustees were Vail, Robinson, Griswold, Hart and Pinkham.

There is no evidence that the financial transactions between the bank and mill, prior or subsequent to May 1, 1875, were unknown to or disapproved by the board of either corporation, and this court will not, for the purpose of reversing the judgment, presume that the transactions were unauthorized by the boards. The contract does not appear to have been entered into for the personal benefit of Vail or Robinson, but solely for the benefit of the then involved corporations, and there is no evidence that Vail or Robinson profited, or sought to profit, by the contract. The contract was one which the boards of the corporations had power to authorize, their presidents to make, or to ratify after it had been made, and the burden was on the plaintiff to show that the contract was not authorized or ratified by the boards. (*Bank of Vergennes* v. *Warren*, 7 Hill, 91; *Gillett* v. *Campbell*, 1 Denio, 520; *Elwell* v. *Dodge*, 33 Barb. 336; *Chemical Nat. Bank* v. *Kohner*, 85 N. Y. 189, 193; *Smith* v. *Hull Glass Co.*, 11 C. B..897, 929; *Lee* v. *Pittsburg Coal and Mining Co.*, 56 How. 373; affirmed, 75 N. Y., 601; Morawetz on Corp. [2d ed.] §§ 336, 538, 593.) The plaintiff failed to rebut the presumption that the contract was entered into or ratified by the authority of the boards of the corporations, and it must be held to be binding on both. Under it the commercial paper made by the mill and paid by the bank after May 5, 1875, was, as to these defendants, paid, and no cause of action was established against them under the twenty-third section in respect to it.

The judgment should be affirmed, with costs.

All concur, except PARKER, J., not sitting.

Judgment affirmed.