*139
 
 Danforth, J.
 

 This action was begun in November, 1884, to recover damages from the Long Island Railroad Company for breach of a written contract purporting to have been made on the 31st day of May, 1879, between the “ Brooklyn, Flatbush & Coney Island Railway Company,” of the first part, “ Thomas R. Sharp, as receiver of the property, etc., of the Long Island Railroad Company,” of the second part, the “ Long Island Railroad Company,” of the third part,, and the “Atlantic Avenue Railroad Company of Brooklyn,” of the fourth part. It was by its terms to continue for a period of five years from its date. The Brooklyn, Flatbush & Coney Island Railroad Company and the Long Island Railroad Company were severally the owners and operators of railways, and so far as is material to any question calling for our discussion, the terms of the contract were such that the first-named company was required to extend and maintain its track at its own expense, but in a manner satisfactory to the other company, from its then terminus at Bedford station, so that it should connect with the tracks of the Long Island Railroad Company on Atlantic Avenue, and thus form continuous lines of double track railroad between the depots of that company at Flatbush Avenue and East New York, and the depot of Brooklyn, Flatbush and Coney Island Railway Company at Brighton Beach on Coney Island, and, as it pleased, run trains over the lines so made continuous between Flatbush Avenue and Brighton Beach. The Long Island Railroad Company and Sharp, its receiver, agreed to furnish it with “ all necessary depot facilities for its trains and passengers ” at Flatbush Avenue, and through its agents sell the tickets at that place, and the uarty of the first part agreed to pay to the Long Island Railroad Company in compensation, “ for the use of its tracks, the sale of its tickets and for depot facilities, twenty per cent of all moneys earned by it for the transportation of passengers between Flatbush Avenue and any and all points on the line of the party of the first part, south of Bed-ford station.” Similar rights were secured to the Long Island Railroad over the continuous line, and a described portion of the plaintiff’s tracks and depot facilities secured to it at Brighton Beach, and for this use and these facilities the defendant agreed to pay thirty-three and one-third per cent of all moneys earned by it for the transportation of passengers between Long Island City and Brighton Beach, and thirty-five per cent of all moneys earned by it for the transportation of passengers between Bush-wick and Brighton Beach, and certain other proportion for passengers between other stations.
 

 It was also provided that “ the party of the first part ” (the B. F. & C. Co.), “ shall begin to run trains from Flatbush avenue to Brighton Beach, and the party of the second part ” (the L. I. R. R. Co.), “ from Long Island City to Brighton Beach, on or before the fifteenth day of June in each year, and shall run every day thereafter, Sundays excepted, until the first day of October, at least twelve trains each way.”
 

 Other payments were provided for, growing out of these arrangements for the use of each other’s track, and it was agreed
 
 *140
 
 that full statements of the business done under the agreement should be given to each party by the other at stated intervals, and that the books of the several companies should be open to the other’s inspection.
 

 The receivership of the Long Island Railroad terminated iti October, 1881, and the road was restored to the company. The questions at issue concern only the plaintiff, who represents the forty of the first part in the agreement, and the defendant, the Long Island Railroad Company. The alleged breach consisted in substance of the failure of the defendant’s receiver, and its own subsequent refusal to run the trains of the Long Island Railroad Company over a certain portion of the plaintiff’s road, as provided by the contract, their omission to furnish depot facilities as also> therein provided. Issue was taken upon these allegations and a trial had. At the close of the evidence the defendant’s counsel, moved the trial judge to dismiss the complaint on the ground that the evidence was insufficient to show a contract between the plaintiff and defendant The motion was denied, and the case submitted to the jury upon both issues. Their verdict was for the plaintiff, and it has been approved both by the trial judge in denying the defendant’s motion for a new trial, and by the general. term in affirming the order and the judgment entered upon the verdict.
 

 The defendant’s contention is that the contract was not binding upon it. It was, as is conceded, executed in the name of the corporation by its president and secretary. It was sealed with its corporate seal, affixed by its proper officers. It was, therefore, jDresumptively valid, and was binding upon the corporation until evidence to the contrary should be produced. If the seal was obtained fraudulently, or the officers acted without authority, either in executing the contract in their official character, or m affixing the seal, it lay with the defendant to establish those facto The evidence adduced for that purpose was from the secretary. He testified that the contract was drafted in pursuance of negotiations between the two companies, and the draft was in “his office.” An emergency arose which called for its completion, and he, after consulting with Sharp, the president, with him signed, sealed and delivered it” “ I expected,” he says, “ to get a ratification.” Both of these officers were also directors, and the witness says, “I intended to call the board’s attention to it, but forgot it” The court committed no error in refusing to dismiss the complaint, or in refusing to charge the jury that the contract was not binding upon the company. Sharp, the president, was not examined upon that point, and whether the officers of -the company did, in fact, exceed their-authority, might have been under the evidence a question for the jury. No request was made to submit it. There was, however, abundant and conclusive evidence that the contract was adopted and ratified by the defendant in its corporate capacity. It was, as the secretary and counsel of the defendant testified, drafted in pursuance of negotiations had between the parties. It was acted upon by the defendant in the management of its business; for one year the defendant complied
 
 *141
 
 with its terms, and received for the entire period the benefit of' a faithful performance on the part of the other contracting party. It necessarily affected the running of plaintiff’s trains and the management of the business for which it was incorporated. As summarized by the learned counsel for the appellant, “it gave rights to another corporation” (the plaintiff) “to use the tracks and depots of the Long Island Eailroad Company, and provided for a division of earningsand it is impossible to suppose that these things were suffered or enjoyed without full corporate knowledge of the contract 'obligations by which they were provided for.
 

 Moreover, the defendant received a pecuniary benefit under the contract, upon the assumption that the contract was valid. If they intended to disavow it, it was their duty to be active in so doing, and not remain wilfully passive in order to profit by an omission or mistake on the part of their own officers and which they might have prevented. The appellant argues that the object of the parties might have been attained by two contracts as well as by one, and therefore the defendant is at liberty to adopt so much as makes for its benefit, and reject the rest. It may be that two separate contracts could have been framed in such manner as to meet the views of the parties, and in that case one have been rejected at the party’s risk, and the other performed, but only one was prepared, and that recites that “ in consideration of the mutual covenants and agreements ” therein “ contained,” the parties have agreed and do agree as therein expressed. The provisions are reciprocal. One party cannot say, “I have got all I bargained for,” and without liability repudiate the mutual obligation which enabled it to do so and formed the consideration of the bargain. One promise was the consideration for the other, and together they constituted a binding agreement. If, in fact, the formal execution of the contract was unauthorized, it is plain the agreement was one the company had power to make, one which they intended to make, supposed they had made, and which with knowledge, or full means of knowledge of its terms, they acquiesced in and ratified by acting under it so long as it was profitable, and refusing to do so only when it seemed otherwise, but receiving the benefit of it at all times. It is now argued that the question of ratification should have been passed upon by the jury. It is a sufficient answer that no request was made to have it submitted to them; but it may be further said that upon that point the evidence was all one way and conclusive in the highest degree. We find no legal merit in either of these points.
 

 The other questions raised by the appellant have been examined ; so far as they require particular observation, the remarks of the general term are sufficient. We find none which requires other discussion. Upon the assumption that the contract bound the defendant, the plaintiff’s way was clear, and his right to a recovery certain. The reasonableness of the amount actually given to him is not for us to determine.
 

 "The judgment appealed from should be affirmed.
 

 All concur.