FRANK S. OAKES, Appellant, *v.* THE CATTARAUGUS WATER COMPANY, Respondent.

Where the president of a private corporation has full personal charge of its business, he represents the corporation, and *prima facie* has power to do any act which its directors could authorize or ratify.

*It seems*, where the business of a private corporation or an individual is threatened with competition, a contract with the competitor that he shall abandon his enterprise and take employment at an agreed compensation, with such corporation or individual, is not against public policy.

C., who was engaged in organizing a water works company, and was the principal promoter of the enterprise, in the name of the proposed corporation entered into a contract with plaintiff, agreeing to pay him $1,000 for his services "for securing right of way, hydrant rental, placing investments, and in all things pertaining to the building of water works." The company was thereafter incorporated; C., his wife and brother became respectively president, secretary and treasurer thereof; C. was its general managing agent and had full direction and charge of its business. The water works were constructed, and plaintiff, at the request of C., rendered services of the character called for by the contract. In an action against the corporation on the contract it appeared that, after the completion of the works, C. acknowledged the indebtedness to plaintiff and promised to pay it. *Held* (FINCH, and GRAY, JJ., dissenting), that while the contract, having been made before defendant had a corporate existence, was not, at the

inception thereof, its contract or binding upon it, yet it was of such character that C. had the power to make or ratify it on behalf of the corporation when it attained a legal existence; that if C. intended, by calling upon plaintiff to do the things agreed to in the writing, to adopt and ratify the agreement on behalf of the defendant, and if plaintiff intended to and did perform for the corporation, it became bound; that these were, under the circumstances, questions of fact for the jury; and so, that an order dismissing the complaint on trial was error.

Evidence was given on the trial tending to show that plaintiff, before contracting with C., contemplated the formation of a similar corporation himself, and that one purpose of the agreement was to compensate him for consenting to abandon the enterprise. No such consideration was stated in the agreement. *Held*, that the court was not warranted in holding, as matter of law, that the purpose of the contract was forbidden by public policy, or that it was made for purposes other than that stated upon its face.

(Argued June 21, 1894; decided November 2, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 18, 1893, which denied a motion by plaintiff for a new trial and ordered judgment in favor of defendant upon a decision of the court on trial at Circuit non-suiting the plaintiff.

This action was brought upon the following agreement:

"CATTARAUGUS, N. Y., *Feb.* 18, 1890.

"This agreement made by and between the Cattaraugus Water Company of Cattaraugus, N. Y., and F. S. Oakes, of the same place, Witnesseth: The Cattaraugus Water Company hereby agrees to and with F. S. Oakes to pay him the sum of One Thousand Dollars in consideration of his services to said Water Company in securing right of way, hydrant rental and placing investments, and in all things pertaining to the building of water works at Cattaraugus, N. Y.

"Said sum to be paid at the completion of said works.

"Said services to consist of aiding and helping the said company in the above matters, but without cash expense to said Oakes.

"If said water works are not constructed in Cattaraugus by said company, then this agreement to be null and of no effect.

" This agreement shall be binding on the successors and
assigns of the said company.

"GEORGE N. COWAN,

"Att'y for Cattaraugus Water Co.

" F. S. OAKES."

The facts, so far as material, are stated in the opinion.

*William H. Henderson* for appellant. Upon the facts as
the jury were authorized to find them, George N. Cowan, as
the president and the chief managing officer of the defendant
in constructing the water works for the defendant at the vil-
lage of Cattaraugus in the summer and fall of 1890, stood in
the place of the corporation, and his acts and admissions while
so engaged in the duties of his office were the acts and admis-
sions of the defendant itself. (*Jourdan* v. *L. I. R. R. Co.*,
115 N. Y. 380.) The defendant having had, through the
action of its chief managing officer, the entire benefit of the
performance of the contract on the part of the plaintiff, must
be considered as having ratified all its terms, and the defend-
ant must be presumed by such ratification to have agreed to
all the provisions thereof, and to have become obligated to pay
to the plaintiff the sum sued for. (*Jourdan* v. *L. I. R. R.
Co.*, 115 N. Y. 380, 385; *Scott* v. *M., etc., R. R. Co.*, 86 id.
200; *Beers* v. *P. G. Co.*, 14 Barb. 358; *Wild* v. *N. Y., etc.,
M. Co.*, 59 N. Y. 644; *Decker* v. *G., etc., Co.*, 61 Hun, 516;
*Hoag* v. *Lamont*, 60 N. Y. 96, 101; *Bommer* v. *S. S. Co.*,
81 id. 468.) George N. Cowan being the general agent and
as such in the actual charge of the business of the defendant
in constructing the water works, and being the chief officer of
the directors, the directors of the defendant must be presumed
to have had knowledge of all his acts and doings, and must
be presumed, in the absence of any evidence to the contrary,
to have assented thereto. (Story on Agency, § 140; *Hyatt*
v. *Clark*, 118 N. Y. 563, 569; *Adams* v. *Mills*, 60 id. 533,
539; *Woodruff* v. *E. R. Co.*, 93 id. 609; *S. H. Co.* v. *E. H.
B. Co.*, 90 id. 607.) Upon the whole case, the plaintiff was

entitled to submit the evidence to the jury. (*Haman* v. *Jordan*, 129 N. Y. 61.) The claim of the defendant that the contract sued upon is void and illegal as being against public policy, is destitute of merit. (*D. M. Co.* v. *Roeber*, 106 N. Y. 473; *Leslie* v. *Lorillard*, 110 id. 519; *Tode* v. *Gross*, 127 id. 480; *W. T. Co.* v. *Poole*, 51 Hun, 157; *Cameron* v. *N. Y. & M. V. W. Co.*, 62 id. 269.)

*D. E. Powell* for respondent. This contract comes within the rule rendering it void on the ground of public policy. (*People* v. *N. R.*, etc., *Co.*, 22 Abb. [N. C.] 164; *Wilber* v. *N. Y. C. Co.*, 35 N. Y. S. R. 81; *Atcheson* v. *Mallon*, 43 N. Y. 147; *Mills* v. *Mills*, 40 id. 543; *Gray* v. *Hook*, 4 id. 449; *Pease* v. *Wolsh*, 49 How. Pr. 269; *People* v. *Lord*, 6 Hun, 390; *State* v. *Hartford*, etc., 29 Conn. 538; *Judd* v. *Harrison*, 46 N. Y. S. R. 925; *Brisbone* v. *Adams*, 3 N. Y. 129; *Bracket* v. *Wyman*, 48 id. 667; *People* v. *Stevens*, 71 id. 527; *Rose* v. *Truax*, 21 Barb. 361; *Davison* v. *Seymour*, 1 Bosw. 88.) Had the agreement been valid the plaintiff could not recover as the contract would have been entire, and full performance on his part would be a condition precedent to recovery. (*Monell* v. *Burns*, 4 Den. 121; *Reab* v. *Moore*, 19 Johns. 337; *Wolf* v. *Howes*, 20 N. Y. 197.) A contract to prevent rivalry or competition is not within the scope of defendant's charter, and no officer can make such a contract or bind the corporation by ratification or otherwise, and a person dealing with a corporation is chargeable with notice of its power, and the purposes for which it was formed, and when dealing with its agents or officers is bound to know the extent of their power and authority. (*Alexander* v. *Cauldwell*, 83 N. Y. 480; *Jemison* v. *C. S. Bank*, 122 N. Y. 135; *Milbank* v. *N. Y., L. E.*, etc., *R. R. Co.*, 64 How. Pr. 401.) There is no proof that any person, when an officer, ever saw or knew that plaintiff was performing the slight services that he claims to have rendered; and if they had, plaintiff could not recover their value, for there is no proof establishing it, and that is not the cause of action claimed in the complaint. The action

is based upon the written contract, and the General Term was right in so holding. (*Foley* v. *Speer*, 100 N. Y. 552; *Harrington* v. *F. N. Bank*, 1 T. & C. 361; *Nixon* v. *Palmer*, 8 N. Y. 398; *Fisher* v. *Murdock*, 13 Hun, 487.) The declarations of the individual members of the company offered by the plaintiff were not competent. (*Jex* v. *Board of Education*, 1 Hun, 157; *Alexander* v. *Cauldwell*, 83 N. Y. 480; *N. F. S. B. Co.* v. *Buchanan*, 66 id. 261; *Custer* v. *T. G. Co.*, 63 Penn. St. 381; *B. Church* v. *B. F. Ins. Co.*, 28 N. Y. 153; *Justh* v. *N. Bank*, 4 J. & S. 273; *Happock* v. *Moses*, 43 How. Pr. 201; *F. N. Bank* v. *O. N. Bank*, 60 N. Y. 278; *Taylor* v. *S. Ave. R. R. Co.*, 27 J. & S. 513; *Woods* v. *Franklin*, 46 N. Y. S. R. 396; *Jackson* v. *Sandman*, Id. 633; *M. N. Bank* v. *Clark*, 139 N. Y. 314; *Thallhimer* v. *Brinckerhoff*, 4 Wend. 394; *Fogg* v. *Child*, 13 Barb. 296; *Budlong* v. *Van Nostrand*, 24 Barb. 25; *Islee* v. *Tucker*, 5 Duer, 593.)

O'BRIEN, J. The trial court non-suited the plaintiff, and the principal question presented by the appeal is whether there was proof made which should have been submitted to the jury. The plaintiff made a request to that effect, which was denied and an exception taken. The defendant is a corporation organized under the provisions of chapter 737 of the Laws of 1873 and the acts amendatory thereof and supplementary thereto for the purpose of supplying the village of Cattaraugus with water. The certificate of incorporation was executed on the 3d day of March, 1890, but not filed in the proper office until the 19th day of May following, at which date, it is assumed on both sides, that the defendant's corporate existence begun. The statute requires the consent of the town authorities of the town where the operations of the corporation are to be carried on as a preliminary condition of its creation, and this was procured by the parties promoting the organization of the defendant on the 22d day of February, 1890. The application for this consent was in writing, signed by the seven persons who afterwards became the incorporators,

and bears date February 5, 1890, and proves that at that date, if not before, they intended, in case the application was granted, to form the corporation.    One George N. Cowan, an attorney at law, seems to have been the principal promoter of the whole enterprise.    His name appears first upon the written application to the town authorities for the consent, and in the certificate of incorporation, and is followed by that of his wife and brother with four other persons.    Upon the organization of the defendant he and his wife and brother became respectively the president, secretary and treasurer of the corporation.    This action was brought by the plaintiff to recover the sum of $1,000 upon a written agreement bearing date February 18, 1890, signed by the plaintiff and by Cowan as attorney for the defendant.    The plaintiff's difficulty in the case arises from the fact that this paper was executed, as will be seen from the dates, before the defendant had any corporate existence, and, therefore, in its inception, it was not the defendant's contract or binding upon it in any form.    By the terms of the instrument the defendant agrees to pay to the plaintiff the sum of one thousand dollars for his services to defendant in securing right of way, hydrant rental and placing investments and doing things pertaining to the construction of the water works for the village, to be paid at the completion of the work.    It was further stated that unless the defendant constructed the works the agreement was to be considered and treated as null and void, but if it did construct then the plaintiff's services for which the compensation was to be paid should consist in aiding and helping the defendant in the matters above specified without cash expense to him. It was shown at the trial that the defendant in its corporate capacity did construct and complete a system of water works for the village.    The work was commenced about June, 1890, and completed before the commencement of this action.    The defendant established an office in the village and retained it while the work was in progress.    Cowan was the president and manager of the business and had full direction and charge, his wife acting as secretary and his brother as treasurer of the

corporation. The plaintiff, upon the request of Cowan, the president, performed services for the defendant of the kind and character described in the contract above mentioned. They do not appear to have been of a very important character and no proof was given in regard to their value, but, so far as appears, he performed all that was required of him. After the completion of the water works Cowan on several occasions acknowledged the indebtedness to the plaintiff and promised to pay it. There is no proof in the record tending to show that the general powers possessed by Cowan as the president of the defendant were limited or restricted by by-laws or in any other way, and we must assume that he had all the power that the president and general managing agent of such a corporation could exercise in the transaction of the corporate business at the place where its operations were being conducted. The general powers of such an officer may be limited or restricted by the charter or by-laws of the corporation. These restrictions may not be binding on all persons dealing with the corporation under all circumstances, as secret and unknown instructions to a general agent of a natural person do not always bind persons dealing with the agent in ignorance of such instructions and relying on what appears to be his actual powers. In this case the president, having full personal charge of the business which the defendant was organized to transact, represented the corporation, and *prima facie* he had power to do any act which the directors could authorize or ratify. (*Hastings* v. *Brooklyn Life Ins. Co.*, 138 N. Y. 473; *Conover* v. *Ins. Co.*, 1 id. 290; *Booth* v. *F. & M. N. Bank*, 50 id. 396; *Leslie* v. *Lorillard*, 110 id. 519; *Holmes* v. *Willard*, 125 id. 75; *Patterson* v. *Robinson*, 116 id. 193; *Rathbun* v. *Snow*, 123 id. 343; *N. Y. & P. & B. R. R. Co.* v. *Dixon*, 114 id. 80; Morawetz on Corporations, §§ 251–253.) There can be no doubt, I think, that the contract which is the basis of this action was of such a character and the objects expressed upon its face were of such a nature that the president and general manager of the enterprise had the power to make it in behalf of the corporation whenever it attained a legal existence. The

corporation had resolved to do the work, which was put in charge of the president, who was the principal promoter in organizing it. He was on the ground directing the operations and must be assumed to have the power to do whatever was necessary in executing the corporate objects. It cannot be doubted that he had power to employ engineers and workmen to construct the works and to bind the company by contracts for labor and materials. He could also employ men to secure for the company rights of way, rentals for hydrants and the other things necessarily pertaining to the business, and if he could make contracts for that purpose, why could he not adopt and ratify one made by himself, though before the corporation was legally created, but in anticipation of what subsequently occurred in obtaining the consents and filing the certificate of incorporation? We think this was fairly within his general powers, and if he intended, in behalf of the corporation which he represented, by calling upon the plaintiff to do the things which he had agreed to do in the writing, to adopt and ratify the agreement made before the incorporation, instead of making a new one, and the plaintiff intended to and did perform for the corporation the things specified in the agreement, there is no good reason why the corporation did not become bound by his action. Whether this was the intention and purpose of the president of the defendant and of the plaintiff was, under the circumstances of the case, a question of fact which should have been submitted to the jury. Ratification or adoption, which in this case mean the same thing, is largely a question of intention to be determined from facts and circumstances as one of fact, and the court was not warranted, under the circumstances, in disposing of the question as one of law.

But it is insisted that the contract, even if regarded as the corporate obligation, is void as against public policy. There was proof given at the trial tending to show that the plaintiff, before entering into the contract with Cowan, contemplated an application in his own name to the town authorities for permission to form a corporation to construct the works, and that

the purpose of the agreement was to compensate him for consenting to abandon the enterprise and allow the defendant to obtain the consent and reap the benefit of the enterprise. It is alleged in the complaint that at the time of entering into the agreement it was understood and agreed between the parties that in addition to the consideration mentioned in the writing for the payment of the one thousand dollars, the plaintiff was not to prosecute or carry on the business for which the defendant was subsequently organized, and was not to organize any corporation for that purpose, or to ask or receive a franchise from the town authorities for that purpose. It was further alleged that the plaintiff kept and performed these conditions, which were not expressed in the writing, but fully understood between the parties, but did assist Cowan in his efforts to accomplish the purpose originally contemplated by the plaintiff. These allegations are, however, put in issue by the answer. The proof would have justified a finding by the jury that the plaintiff's promise to abandon the enterprise and leave the field open to Cowan and his associates was an element that entered into the contract, and an inducement to its execution. No such purpose, however, appears upon the face of the contract. The consideration there expressed for the payment of the money was services which the plaintiff could lawfully perform, and which it is claimed he did perform, for the defendant. The court was not warranted in holding, as matter of law, that the purpose of the contract was forbidden by public policy, or that it was made for a purpose other than that stated upon its face. If that question was in the case at all it was one for the jury, as the evidence was not conclusive but open to different inferences. But we think that this agreement, upon any view of the facts, does not come within that class of contracts which are forbidden or are held void on grounds of morality or public policy. There was no purpose to suppress competition or bidding at any public sale or letting of a contract for public purposes or in restraint of trade or to influence the action of public officials. Assuming that both the plaintiff and Cowan intended to apply

for the franchise, and that the latter persuaded the former to abandon his purpose and aid him in the manner mentioned in the contract for the consideration promised, there was nothing immoral or that threatened the public interests or the public good in such an arrangement. If the business of a private individual or corporation is threatened with competition it is not illegal or immoral if one can persuade his competitor to abandon an enterprise in which both cannot succeed, and take employment with the one remaining in the business at a stated compensation. Such an agreement fairly entered into is legitimate business. If the parties in this case deemed it for the interest of both that only one application should be made for a franchise that could be granted to but one of them, the arrangement does not, as I conceive, violate any settled rule or principle of public policy. (*Diamond Match Co.* v. *Roeber,* 106 N. Y. 473; *Leslie* v. *Lorillard,* 110 id. 519; *Tode* v. *Gross,* 127 id. 480; *Watertown Thermometer Co.* v. *Pool,* 51 Hun, 157; *Cameron* v. *N. Y. & Mt. Vernon Water Co.,* 62 id. 269.)

For these reasons the judgment should be reversed and a new trial granted, costs to abide the event.

GRAY, J. (dissenting). If, at the time the agreement set forth in the complaint was made, there had been such a corporation as the Cattaraugus Water Company, then it would be quite conceivable that there might be a ratification by it of the act of a person standing in the relation to it of an officer or agent. Ratification presupposes the doing of an act by an agent, which a principal could have authorized. It is defined as an agreement to adopt an act performed for us by another and is equivalent to an original authority to do the thing in question. But, here, Cowan represented no one but himself. He and others were proposing to associate themselves in a corporate project. He was a mere promoter and he had no principal. When the plaintiff entered into the agreement with Cowan, he was bound to inform himself as to whether the latter represented an actual principal. If he neglected to do so, his

agreement was worthless; except so far as it imposed upon Cowan, individually, a liability for undertaking to act with no responsible principal behind him.   (Dunlap's Paley on Agency, *374.)   We may assume that there was sufficient evidence upon which a jury might have found that there was ratification, if there had been a contract made for the company; but it ought to be perfectly manifest that, unless there had been *in esse* a corporation, *de-facto* or *de-jure,* which could have made Cowan its attorney or agent, there could not be such a thing as a ratification.   The rule is stated in Morawetz on Private Corporations (section 547) as follows, viz.: "A corporation is not responsible for acts performed, or contracts entered into, before it came into existence, by promoters or other persons, assuming to bind the company in advance."   Again, at section 549, the author says, that "a corporation cannot be charged with the acts or contracts of its promoters, by virtue of the technical doctrine of ratification.   This doctrine applies only to acts performed on behalf of an existing principal."   These statements are amply borne out by the authorities cited by the author, and are founded in clear reason.   (And see *Caledonian etc. R. Co.* v. *Helensburgh,* 2 Macq. H. L. Cas. 391, 409.)   There may, however, be an adoption of agreements made by promoters of companies by a formal acceptance; or, if it is a case where the members of the corporation would be chargeable with knowledge of the contract, and had knowingly received the benefit of an engagement entered into by promoters, adoption might be implied.   The adoption of such an agreement by a corporation is equivalent, of course, to the creation of a new agreement and is governed by all the rules applicable to the formation of a contract under the common law.   (1 Morawetz Corps. sec. 549.)   I am unable to believe, and I know of no authority for holding, that adoption, in such a case, of a written contract could rest in implication from the mere statements or acts of the interested party who made it, with no evidence to show any knowledge or acquiescence on the part of any other officer or member of the corporation.   I think the other view would be a most hazardous one to take, for the interests of shareholders in corporations.

Assuming that a corporation may become obligated by a contract, made for it before its incorporation, through acceptance or adoption, it should at least appear, in order to justify a verdict from the facts, that those facts established a knowledge by its agents of its existence and of its terms; or that the benefits, the acceptance of which is relied upon to constitute adoption, were of that nature as to presuppose and to charge the company or its agents with knowledge of a contract with the person from whom derived.

In this case it is not proved that there was any formal or official action upon the agreement; or that any of the directors knew of such, outside of Cowan himself. There was nothing which amounted to a representation by the defendant to plaintiff that the contract was subsisting and valid. (*Wilson* v. *West Hartlepool R. Co.*, 2 De G., J. & S. 491.) There may have been sufficient evidence in the case to warrant the submission to a jury of the question whether the defendant had not, through its chief officer and manager, become liable to pay plaintiff the value of his services; as the evidence might exhibit that value to be. But this is not such an action. The plaintiff rests his action solely upon the obligation, which the agreement set forth imposed upon the defendant, and if, as it is conceded, there could have been none imposed at the time, it could never have become one, in the absence of an adoption of the agreement. As I have said, this agreement, so far as the record discloses, was never brought to the knowledge of any of the directors, or of the members of the corporation, and it is not at all easy to see what services the plaintiff actually did under it, before or after the company was formed, which could possibly have led any one to suppose that he was under a contract with it, of the nature of the one in question, or of any other nature. We assume, however, that there were services rendered to and accepted by the defendant; but we hold that they were to be recovered for according to their value and that the contract produced by the plaintiff never became the agreement of the company, so as to obligate

it, absolutely and in all events, to pay him the sum stated therein, upon the completion of the water works.

For these reasons the judgment should be affirmed, with costs.

Earl, Peckham and Bartlett, JJ., concur with O'Brien, J.; Finch, J., concurs with Gray, J., Andrews, Ch. J., not sitting.

Judgment reversed.