Thomas A. Patteson, Jr., Respondent, *v.* The Ongley Electric Company, Appellant.

*Corporation — contract signed by its president — burden of proof — ratification of the act of its president.*

Where a promisee sues upon a contract made with him in the name of a corporation by its president, and the contract is one which the company could authorize its president to make or one which it could ratify when so made, the burden rests upon the corporation to show that the act of the president was unauthorized.

The specific acts which constitute a ratification, considered.

Appeal by the defendant, The Ongley Electric Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of February, 1895, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit.

*Rufus W. Peckham, Jr.,* for the appellant.

*John R. Dos Passos,* for the respondent.

Parker, J.:

In pursuance of a written contract signed "The Ongley Electric Co., T. W. Robertson, President," the plaintiff's assignor, J. F. Wiechers, undertook to, and did sell 1,500 shares of the treasury stock of the Ongley Electric Company for $90,000, upon an agreed commission of five per cent; $1,550 was paid out of the treasury of the company to Wiechers on account of the commissions, but it has refused to pay the balance. The ground on which defendant bases its refusal to pay is that the president had no authority to make the contract.

The facts are, briefly, that on the 5th day of April, 1892, plaintiff's assignor received a letter signed "The Ongley Electric Company, T. W. Robertson, President," in which reference was made to a conversation of the day before had between Wiechers and Robertson on behalf of the electric company, which concluded with the proposition that for services to be rendered, the company would pay a commission of five cent upon the proceeds of the stock sold.

Subsequently, but on the same day, plaintiff's assignor received a contract signed as stated in the opening sentence, which provided, among other things, that he should receive a commission of five per cent, on account of stock sold for cash, for his services. Wiechers brought about a sale of 1,500 shares to a Mr. Hopkins at sixty, making a total purchase price of $90,000. The contract of sale between the Ongley Electric Company and George B. Hopkins was in writing and signed in precisely the same manner as the contract with plaintiff's assignor. It appears from the minutes of the board of directors that subsequently the contract of sale with Hopkins was fully ratified, and touching that general subject there was adopted a preamble and resolutions. One of the resolutions reads as follows: "*Resolved,* that all and every the acts of the president of this company and of the said J. T. Thompson & Co. in respect of the stock which belonged to this company, above referred to, be and hereby are in all things approved, ratified and confirmed." After the stock had been transferred to Hopkins and the defendant had received the price agreed to be paid therefor, Wiechers received $1,550, which was paid to him in five checks of the defendant, each of which was signed by the president and treasurer of the company.

These checks were paid in due course, and subsequently came back to the company. When produced upon the trial there was stamped on the face of each check the following : "Henry M. Tate, Auditor, Feb. 3, 1893."

The first check bears date November 10, 1892, and the last one November 21, 1892. In February following there was a meeting of the directors and stockholders of the defendant, at which Wiechers was present. At this meeting there was presented a balance sheet taken from the books of the company, which, among other things, purported to state the indebtedness of the company, and to whom such indebtedness was due, and that the same had been duly audited by Henry M. Tate, auditor of the company. This statement represented that there was due to Wiechers the amount which is claimed in this action. Wiechers says that there was no objection by any one, and that there was a resolution adopting the statement as a whole. This statement is not controverted. On the contrary, it is fully corroborated by the books and testimony of certain officers of the company.

John B. Underhill, who was at the time of such meeting the secretary of the company, read the following extract from the book of minutes of the company : " The treasurer submitted a statement of the company of December 31, 1892, audited by Mr. Tate, the auditor of the company. Mr. Dixon asked for the results, and on his being shown the balance sheet and examining it, moved that it be accepted, which motion was seconded by Mr. Hopkins and Mr. Devine and passed by all present."

There is no pretense that the president or other officers of the company attempted to keep away from the directors and stockholders the facts relating to the contract by which it was agreed to pay to Wiechers his commissions.

Some of the officers at least knew it at about the time the contract was made, and it does not appear but that all of them did.

The secretary of the meeting, who was called by the defendant, admitted that he knew that Wiechers was negotiating for the sale of the stock with Hopkins, and that it was agreed that he should receive five per cent for commissions if successful.

The transaction was entered upon the books of the company in the regular way, an account being opened with Wiechers after the sale of the stock in which he was charged with the payments made on account. And the bill of Wiechers came regularly to the attention of the auditor employed by the company to audit its accounts, who after making the audit, entered it in the statement as we have already observed, which in due course came before the directors and stockholders at a meeting at which a majority of both were present.

This statement, as we have seen, was after an examination accepted and passed. It does not appear that there was any other method by which this company formally passed upon claims against it. At the close of the testimony the court directed a verdict in favor of the plaintiff for the balance claimed to be due, with interest.

We think this judgment can stand for two reasons :

(1) Because the contract made in the name of the corporation by its president is one the company had power to authorize the president to make or to ratify after he had made it, and, therefore, the burden was upon the corporation of showing that it was not authorized. (*Patterson* v. *Robinson*, 116 N. Y. 193 ; *Jourdan* v. *L. I. R. R. Co.*, 115 id. 381 ; *Oakes* v. *Water Co.*, 143 id. 430.)

This burden the appellant did not meet. Its counsel correctly states in his brief that all the evidence offered by either party, which in any way tended to show the powers of the president, was put in evidence by the defendant and consisted of a resolution of the board of directors appointing the president and two other members of the board an executive committee to act in minor matters.

(2) The evidence of ratification and approval by the defendant,. its officers, directors and stockholders, was so complete as to justify the direction of a verdict.

The appellant urges that this question ought to have been submitted to the jury, but it seems to us not.

There was no dispute as to the facts. The history of the transaction, from the date when the president signed the contract down to and after the meeting of the directors and stockholders, at which the auditor's statement was presented, seems to be complete. No part of it is in conflict, and, therefore, it was proper for the court to determine what conclusion of law should follow from the undisputed facts.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.