### HUDSON RIVER & W. C. M. R. CO. v. HANFIELD et al.

(Supreme Court, Appellate Division, Third Department. January 11, 1899.)

1. CORPORATIONS—OFFICERS—AUTHORITY—EVIDENCE.

A corporation authorizing its president to contract for the construction of a railroad authorizes him to advance bonds and stock of the corporation to a contractor agreeing to construct it.

2. SAME.

The president may, under such an authorization, extend the time of performance to a contractor whom he has employed.

3. SAME—BURDEN OF PROOF.
 A corporation has the burden of showing that its president had no au-
thority to do what the corporation could authorize him to do.
4. SAME—ISSUING STOCK AND BONDS.
 Laws 1892, c. 688, § 42, prohibiting corporations from issuing "stock
or bonds except for money, labor done, or property actually received,"
does not preclude a corporation from delivering stock and bonds to a con-
tractor as advance payments on a contract to construct a railroad worth
the amount of the stock and bonds.
5. SAME—CONTRACTS—RESCISSION.
 A corporation cannot recover back stock and bonds issued by it to a
contractor, on the ground of his failure to construct a railroad as he had
agreed to do in consideration thereof, where it failed to keep its agree-
ment to furnish rights of way.
6. SAME.
 A corporation cannot recover back its stock and bonds, delivered to a
contractor on his agreement to construct a railroad on a right of way to
be furnished by it, on the ground that they were all the assets it had, and
that it had no means to procure the right of way.
 Merwin, J., dissenting.

Appeal from special term, Washington county.

Action by the Hudson River & Washington County Midland Rail-
road Company against De Witt C. Hanfield and another. From a
judgment adjudging certain contracts for the construction of plain-
tiff's railroad void, and requiring defendants to deliver to plaintiff
1,500 shares of its capital stock and $175,000 of its bonds, defend-
ant Hanfield appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

L. Laflin Kellogg, for appellant.

Thomas O'Connor, for respondent.

LANDON, J.   The main issues were that the plaintiff's president
had, without authority, made contracts with the defendant Hanfield
for the construction of its railroad, and had paid him in advance the
contract price therefor, in plaintiff's bonds and stock; that the plain-
tiff had performed, and the defendant had not; that the defendant
had delivered some of the bonds and stock to the defendant Beall,—
and judgment was asked for the return to plaintiff of such stock and
bonds.   The resolution of the plaintiff's board of directors of Novem-
ber 21, 1896, was as follows:

"Resolved, that Dudley Farlin, the president of this company, be, and is
hereby, authorized and empowered to contract and agree in the name of this
company, and to execute any and all contracts, agreements, and papers re-
quired therefor, with any responsible contractor or contractors in good stand-
ing, to construct and equip, in part or in whole, the railroad of this company,
with its stations, terminals, switches, and spurs, and the purchase and pro-
curing any and all rights of way and property required for said railroad and
its completion, upon such terms, conditions, and prices, in cash, in stock and
in bonds of this company, as in his best judgment may be for the most imme-
diate construction, equipment, and completion of said railroad, and to the best
interests of said company."

 The resolution was an ample authorization of its president, in its
behalf, to enter into the contract of June 22, 1897, with the defendant
Hanfield for the construction of its railroad.   The complaint alleges,

but no evidence supports the allegation, that the defendant was not a responsible contractor in good standing. The subsequent contract made by the president in the plaintiff's behalf, October 15, 1897, for the extension of the defendant's time of performance, was also within the authority conferred by the resolution. The attempt to construe the resolution in such way as to deny the authority exercised under it by the plaintiff's president is a denial of the scope and meaning of its terms, resorted to after recognizing and ratifying the contract by accepting some of its benefits, and because of its nonperformance, and after a later attempt to revoke its formal ratification. Besides, all the contracts were duly acknowledged by the president as acting for the company under the authority of its board of directors. They were all such as the corporation could authorize its president to make, or ratify after they were made, and therefore binding upon the corporation, unless it showed affirmatively the lack of authority. Jourdan v. Railroad Co., 115 N. Y. 380, 22 N. E. 153; Patterson v. Robinson, 116 N. Y. 193, 22 N. E. 372; Hastings v. Insurance Co., 138 N. Y. 473, 34 N. E. 289; Oakes v. Water Co., 143 N. Y. 430, 38 N. E. 461.

The plaintiff's line of railroad was, including sidings, to be about eight miles long. Its authorized capital stock was of the par value of $175,000, and it issued bonds to the amount of $175,000. By the first contract the plaintiff agreed to pay the defendant all of said bonds, and $150,000 in said stock,—the $150,000 in stock and $100,000 in bonds upon signing the agreement; and such payment and delivery were made to the defendant on or soon after that day, and the balance of the bonds in installments as the work progressed. The plaintiff had disposed of $25,000 in stock to other parties, but what it got for it does not appear. It has no property, except a few strips of right of way and its maps and profiles. By the first contract the plaintiff agreed to "furnish at its own cost and expense, and at such time or times as not to delay the execution of the work of this agreement mentioned and referred to, all the lands now or hereafter laid out and designated by the chief engineer of the party of the first part for rights of way as the said lands may be required for the construction of the railroad covered by this agreement." It was not shown, nor is it found, that the plaintiff made proper performance in this respect. It was shown "that the largest part, by far, of the rights of way, have never been obtained," and it was shown that the defendant repeatedly requested performance by the plaintiff in this respect; and it was shown that, without a continuous right of way, the trouble of construction would be "doubled up." By the first contract the defendant Hanfield was to settle and discharge existing indebtedness of the plaintiff, not exceeding $5,600. The defendant paid $1,200 upon this item of the contract. Before the third contract was made the defendant Hanfield and the defendant Beall (who does not appeal) made a contract by which Hanfield was to deliver to Beall $138,000 in the plaintiff's bonds and $120,000 in its capital stock; and, in consideration thereof, Beall agreed "to procure to be executed and delivered valid contracts, with reputable and solvent firms or individuals, providing for the full construction and completion within the time named [viz. May 1, 1898] of the said line of railroad, and will agree

out of the proceeds of the securities" aforesaid to pay in full therefor; Hanfield to furnish the right of way. But if Beall should fail to procure and deliver such contracts, and the prosecution of the work should not be actively begun within 30 days, Beall should return the securities to Hanfield, and the contract should cease and determine. By the third contract the plaintiff, by its president, agreed with Hanfield and Beall that Hanfield should receive immediately the $175,000 in bonds and the $150,000 in stock, instead of in installments, as specified in the first contract; and, referring to the contract between Hanfield and Beall, the plaintiff agrees that "the same is accepted and approved by the railroad company," and that the plaintiff will not hinder the performance thereof, but will "lend the best efforts of its officers and servants to the performance of the same." The substance of these last two contracts was that Hanfield should deliver a large amount in bonds and stock to Beall, with an option for 30 days to secure good contracts for the completion of the railroad, which, if not secured, Beall should return the bonds and stock to Hanfield, and the plaintiff assented; and all the bonds and stock called for by the first contract were to be, and were, delivered to Hanfield by the plaintiff, acting through its president. Beall did not perform. This contract, except as to payment in full instead of in installments, perhaps wasted 30 days of time, but did not otherwise release Hanfield from performance. The learned trial judge, although the issue was not made in the pleadings, found that this agreement was in violation of the statutory provisions relating to such corporations, because the defendant had not, when he received the bonds and stock, performed any work, furnished any property, or paid any money, and therefore such payment and delivery were not made for actual money or property. The statute relied upon is section 42 of the stock corporation law (chapter 688, Laws 1892), as follows:

"No corporation shall issue either stock or bonds except for money, labor done, or property actually received for the use and lawful purposes of such corporation. No such stock shall be issued for less than its par value. No such bonds shall be issued for less than the fair market value thereof."

The object of the plaintiff in issuing bonds and stock was to enable it therewith to build its railroad. They were its currency for that purpose. It could lawfully make a contract with a responsible contractor to furnish the material and do the work, and pay therefor, in so far as it acted in good faith, with no inflation of prices as a cover to float paid-up stock for less than its par value, and its bonds at less than their market value. If it chose to pay in advance, it could do so. The contract to build was the consideration for the contract to pay, and presumably was full consideration. The plaintiff, for aught shown to the contrary, thus put itself in a position to get par value for the stock, and market value for the bonds, it delivered to the defendant. The right of the plaintiff to do this, as was said in Van Cott v. Van Brunt, 82 N. Y. 535, "cannot be seriously questioned." To the same effect are Barr v. Railroad Co., 125 N. Y. 263, 26 N. E. 145; Railroad Co. v. Forrest, 128 N. Y. 83, 28 N. E. 137; Coe v. Railroad Co., 52 Fed. 531; Railroad Co. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482; Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct.

476. The plaintiff cites Douglass v. Ireland, 73 N. Y. 100; Boynton v. Hatch, 47 N. Y. 225; Barnes v. Brown, 80 N. Y. 534. The first two were cases in which capital stock was issued for property, the assumed valuation of which was affirmatively impeached, and in the third case the attempt was unsuccessfully made to impeach it. To bring this case within the condemnation of the statute, the burden rested upon the plaintiff—if it was competent for it to prove its own wrong, and profit by it, as to which see Arms Co. v. Barlow, 63 N. Y. 63; Kent v. Mining Co., 78 N. Y. 159; Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390—to prove that the par value of the stock and the market value of the bonds issued to the defendant were worth more than his contract obligation to build the railroad. Schenck v. Andrews, 57 N. Y. 133; Boynton v. Andrews, 63 N. Y. 93; Iron Co. v. Drexel, 90 N. Y. 87; Gamble v. Water Co., 123 N. Y. 91, 25 N. E. 201. This it has not done, and, since its own default in furnishing the right of way left the defendant without legal right to enter upon it, it has failed to put the defendant in default for nonperformance. Moreover, it brought this action before his time of performance had expired.

The plaintiff urges that by the contracts the plaintiff was without means to perform. It ought to have received something for its $25,000 of stock issued to other parties, and, if it has a valuable franchise, it ought to have had credit enough among its own promoters to procure the right of way. The plaintiff's situation seems to afford small hope of a useful career, but it probably can seek repose from further activity, and give place to a less crippled successor.

Judgment reversed; new trial granted; costs to abide the event. All concur, except MERWIN, J., dissenting.