In re WATERLOO ORGAN CO.

(Circuit Court of Appeals, Second Circuit. December 20, 1904.)

No. 23.

1. CORPORATIONS—BANKRUPTCY—BONDS—ISSUANCE AS SECURITY—CLAIMS.

New York Corporation Law (Laws 1892, p. 1824, c. 688) § 2, authorizes corporations organized thereunder to borrow money necessary for their business, and to issue and dispose of their obligations to secure the same, etc.; and section 42, p. 1835, provides that no corporation shall issue bonds, except for money, labor, or property actually received for its use and lawful purposes, and that no bonds shall be issued for less than the fair market value thereof. *Held*, that where a corporation, being in need of money, pledged certain of its bonds to a bank as security for further credit, under an agreement that the corporation might sell any of the bonds at par, and, on delivery of the proceeds thereof to the bank, it would release and redeliver such bonds to the corporation, and the bank immediately thereafter extended its line of credit to the corporation, such bonds were properly issued, and constituted valid claims against the corporation's estate in bankruptcy.

Petition for Revision of Proceedings of the District Court of the United States for the Western District of New York, in Bankruptcy.

See 118 Fed. 904; 128 Fed. 517.

Petition by trustee and creditors of the Waterloo Organ Company, bankrupt, to review an order affirming order of referee adjudging that the First National Bank of Waterloo is the owner and holder of 21 bonds, of $500 each, issued by the bankrupt, and allowing the claim of said bank as a valid obligation of the bankrupt.

George E. Zartman, for petitioners.

J. N. Hammond, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The Waterloo Organ Company, a full liability company, organized under the New York corporation law, was adjudicated an involuntary bankrupt on July 2, 1902.

"On or about September 21, 1900, pursuant to a resolution of the board of directors theretofore passed, the preamble to which was as follows:

"'Whereas, this company desires to obtain additional advances, loans, discounts, credits and other pecuniary accommodations of and from the First National Bank of Waterloo, N. Y., and

"'Whereas, the said bank requires security for all such loans and discounts, and for any other indebtedness or liability of this company to it,'

—The said company by an instrument signed by its president and secretary, executed under its corporate seal and duly acknowledged, transferred to the said the First National Bank of Waterloo twenty-one of the mortgage bonds, of $500 each, of said company, numbered sixty to eighty, both inclusive, as 'a general and continuing collateral security for the payment at maturity and according to the terms thereof of each and all of the notes, checks, drafts, bills of exchange and other obligations of every kind, made, drawn, signed, accepted or endorsed by said Waterloo Organ Company which the said bank now has or which it may at any time hereafter have, hold, purchase or obtain, including any and all claims either in law or in equity, held or acquired by said bank against said Waterloo Organ Company, to the end that the bonds so delivered may be held by the said bank as security and indemnity, for any

indebtedness or liability of any kind whether past, present or future, owing by the said Waterloo Organ Company to the said bank from time to time.'

"Said instrument further provided that the company should have the privilege to sell any of said bonds to other parties at par, to deliver the proceeds thereof to the bank to be applied upon the indebtedness of the company to the bank, and that thereupon the bank should release and redeliver to the company the bonds so sold and paid for." ·

At the time of said transfer the company was directly indebted to the bank upon its own notes in the sum of $6,415.45, and contingently liable as indorser on business paper of its customers, which had been discounted by the bank, in the further sum of about $33,-000. Upon the delivery of the bonds the bank immediately increased its line of discounts to the company, and the indebtedness of the company to the bank was largely increased, and so continued down to the time of the adjudication, when the amount of paper on which the company was directly liable was about $11,000, or a sum in excess of the par value of the bonds. The bank presented before the referee its 21 bonds, of $500 each, for proof and allowance.

The sections of the corporation law of the state of New York (Laws 1892, pp. 1824, 1835, c. 688) pertinent to the issues herein are as follows:

"Sec. 2. That in addition to the powers conferred by the general corporation law every stock corporation shall have the power to borrow money and contract debts when necessary for the transaction of its business or for the exercise of its corporate rights, privileges and franchises, or for any other lawful purpose of its incorporation; and it may issue and dispose of its obligations for any amount so borrowed, and may mortgage its property and franchises to secure the payment of such obligations or of any debt contracted for said purposes."

"Sec. 42. No corporation shall issue either stock or bonds except for money, labor or property actually received for the use and lawful purposes of such corporation. No such stock shall be issued for less than its par value. No such bonds shall be issued for less than the fair market value thereof."

Counsel for the trustee objected on the ground that there was no valid consideration for the issue of the bonds, and that, as they were issued as collateral security without a present consideration, they were not issued for their fair market value, and therefore the issue was ultra vires and void.

The referee has discussed the questions raised herein, and the authorities bearing thereon, and held "that it was in the power of the corporation to pledge these bonds to the bank; that the bank is a lawful holder thereof, and, having proved them, they should be allowed in this proceeding"; and the court below has affirmed the order of the referee allowing the claim on said bonds. We concur in said decision.

The record fails to show any written agreement fixing the value at which the bonds were issued. It is agreed that their par value was their fair market value. In case of doubt as to the character of a transaction, or as to the proper construction and interpretation of a contract, and the determination of the respective rights and obligations of the parties thereto, such doubts may be resolved,

and the intention or understanding of the parties thereto may be determined, by a consideration of their relations, the objects they respectively had in view, their declarations at the time of the transaction, and their acts then and thereafter done.

It appears from the record that the company "desired to obtain additional advances, loans, discounts, credits, and other pecuniary accommodations," and that the First National Bank required security therefor, and for any other obligations of the company, and that the company thereupon issued its bonds to said bank under its power to mortgage its property to secure payment of debts contracted for corporate purposes. In view of the amount then due, and the immediate increase by the bank of the company's line of discount until the direct liability alone of the company exceeded the fair market value or par value of said bonds, we think it may fairly be inferred that the company was in need of further funds in order to carry on its corporate business; that the bank was unwilling to grant further credits except upon receipt of further security, and that the agreement between the parties was that said bonds should be issued at their fair market value, which was their par value, and that they were actually issued for property in the nature of advances, loans, discounts, credits, etc., received for the use and lawful purposes of said corporation; and that said issue, therefore, was valid. That said bonds were issued at par is further indicated by the provision in the instrument of transfer "that the company should have the privilege to sell any of said bonds to other parties at par, to deliver the proceeds thereof to the bank to be applied upon the indebtedness of the company to the bank, and that thereupon the bank should release and redeliver to the company the bonds so sold and paid for." Under this arrangement, the bank was bound to account for said bonds at their par value. This consideration is important in view of the strenuous argument of counsel for petitioner, supported by some decisions, that the company could not dispose of its bonds at less than the value provided for by state Constitution or statute, because the bonds, if resold to an innocent purchaser for value, might be enforced as a valid obligation for their full value against the maker of the bonds. In these circumstances, as the company has actually received a consideration equal to the full value of the bonds, and has enjoyed the benefits thereof, it should not be permitted to escape payment therefor by alleging the invalidity of said bonds.

The principle applicable to such a case is illustrated in Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, where Mr. Justice Gray says:

"The true ground of relief in such cases is clearly shown in a line of opinions, two of which were cited by Mr. Justice Miller in support of the proposition just quoted, in which municipal corporations, having received money or property under contracts so far beyond their powers as not to be capable of being enforced or sued on according to their terms, have been held, while not liable to pay according to the contracts, to be bound to account for the money or property which they had received."

To the same effect are Louisiana v. Wood, 102 U. S. 294, 26 L. Ed. 153; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238. There Mr. Justice Blatchford says:

"In such a case, the party receiving may be made to refund to the person from whom it has received property for the unauthorized purpose, the value of that which it has actually received."

In Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531, and Pratt v. Eaton, 79 N. Y. 449, the court held that a corporation seeking to avoid liability on a contract on the ground that it was prohibited from making the same was bound to restore the consideration received on the faith of such contract, and, where a mortgage was given to secure a loan, although the security received therefor was void because prohibited by law, yet, the loan being valid, the court annexed the pledge to the debt for the loan made, and held that the mortgage bonds might be enforced against the assets of the corporation.

In the case of Francis Bacon against this defendant, decided at this term (134 Fed. 341), we held (following the decisions of the federal courts) that the bonds were void, and the plea of ultra vires was a good defense. That decision, however, was based upon the finding that no property was received by the Organ Company in exchange for its bonds; that the note which was given was not property devoted to the use of said company; that it was not, in fact, received for the lawful use and purposes of said company; and that the company had not enjoyed any benefit from the receipt of said note.

The order is affirmed, with costs.