### In re VALECIA CONDENSED MILK CO.

(District Court, W. D. Wisconsin. April 19, 1916.)

1. BANKRUPTCY ⊙═212—REFEREE—AUTHORITY OF.

   Where the trustee filed petitions to determine the validity of bonds issued by the corporate bankrupt, and the bondholder appeared and contested that issue, the referee, in view of the broad powers of a court of bankruptcy to determine the validity of liens on property coming into its jurisdiction, had power to determine the validity of the bonds.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 236; Dec. Dig. ⊙═212.]

2. CORPORATIONS ⊙═469—BONDS—VALIDITY—DEFENSES.

   As the Negotiable Instruments Act (Laws 1899, c. 356) did not, as between a corporate bond obligor and its obligee, repeal Rev. St. Wis. 1878, § 1753, providing that no corporation shall issue any bonds, except for money or property, estimated at its true money value, actually received by it, equal to 75 per cent. of the par value thereof, and that all bonds issued contrary thereto shall be void, bonds issued in violation of the act are void, regardless of the immediate obligee's lack of knowledge of a violation of the law.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. ⊙═469.]

In Bankruptcy. In the matter of the bankruptcy of the Valecia Condensed Milk Company. On review of proceedings before referee to determine the validity of bonds held by the National Bank of La Crosse. Order of referee affirmed.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank Winter, of La Crosse, Wis., for petitioners.
Sanborn & Blake, of Madison, Wis., for trustee.
Richmond, Jackman & Swansen, of Madison, Wis., for interveners.

GEIGER, District Judge. [1] That the referee acquired jurisdiction to pass upon the validity of the bonds held by the bank does not, it seems to me, admit of serious controversy. The power to determine the extent, character, or validity of claims or liens asserted against property in the hands of the bankruptcy court is necessarily broad; and when the trustee filed a petition upon which creditors claiming to hold liens were required to come in, to the end that the court determine whether the property be sold subject to or freed from liens, such broad jurisdiction not only attached against the bank, but was acceded to, because a statement of the nature of its claim was thereupon made; and subsequently, when the trustee, doubtless as a foundation for and an aid in discharging its duty to make distribution of the sale proceeds, filed a further petition, the bank again appeared, and throughout litigated with the trustee the one question respecting the validity of the bonds held by it. The determination of that question was therefore properly before the referee.

[2] The one question is: Are the bonds valid? Section 1753 of the Wisconsin Statutes, as construed in the Pfister Case, 83 Wis. 86, 53 N. W. 27, the Waukesha Canning Case, 211 Fed. 927, 128 C. C. A. 305, and the Oconto Water Case (C. C.) 52 Fed. 29, has not been impaired or repealed by the Negotiable Instruments Act (Laws 1899, c. 356), as suggested by counsel for the bank; nor has the recent ruling of the Court of Appeals for this circuit, in connection with the Carey & Guyon bonds, growing out of the present bankruptcy (229 Fed. 698), had any such result; and I know of no authority to justify the contention that, as between a corporation bond obligor and its obligee, full effect must not be given to the requirement that 75 per cent. of par be exacted upon issue.

The facts, practically without dispute, fail to show compliance with the statute; and the order of the referee must be affirmed, unless the rule above can justifiably be departed from. Counsel strongly urge In re Progressive Wall Paper Co. (D. C.) 224 Fed. 143, in support of the suggestion that, because the bank loaned an amount equal to the face of the pledged bonds, or because it has offered in these proceedings to diminish its right to a 75 per cent. basis, the court should validate them accordingly. The lengthy opinion in that case comments on the Waukesha Canning Case thus:

"* * * There was no express contract or agreement by the pledgees that they would accept the bonds as collateral and account therefor at 75 per cent. of their par value, or not dispose of same at a less sum. But the court held that such an agreement was implied from the fact that the pledgees knew that, to validate the issue, they must be taken, if at all, at not less than 75 per cent. of their par value. The court therefore held that this was the understanding of the parties, and that the issue of the bonds * * * was legal and valid."

The opinion then adds:

"In the case at bar it is presumed that the bank knew the law, and that there was no intent or purpose to violate it."

The court then directs:

"It follows that the order of the referee holding the bonds invalid, and void in the hands of the bank, should be reversed, and that the injunction against a sale or disposition thereof should be modified, so as to provide that the bank is enjoined and restrained from disposing of the same at less than their par value. The notice that the bonds will be sold by the bank contains no such limitation or qualification. If the bank will file a stipulation that it will not sell or undertake to sell or dispose of these bonds for less than their par value, and stating that such agreement was a part of the contract of pledge, there may be an order reversing the order of the referee now under review. This will clear the situation and leave the bank free to act in the premises. Should the bank then violate the agreement or contract of pledge as thus made definite and certain, it would be answerable to the referee in bankruptcy for any loss the estate represented by him might sustain."

The Waukesha Canning Case, while it may take an extreme view of the facts there presented, does not, in my judgment, justify doing what was finally done in this Wall Paper Corporation Case, and what the bank now asks in the present case. The violation of this law, or the fact of noncompliance with its provisions, is the only issue. If presumption or proof of a bondholder's knowledge of the law, and like presumption that he did not intend to violate it, will absolve him from the consequences of a violation in fact, then the law becomes inoperative, except as to those who may be shown to have been wholly ignorant of its terms. Irrelevant protestations of knowledge of the law, of honesty of purpose and the absence of intent, override noncompliance and violation in fact, by granting a sort of privilege of nunc pro tunc validation. I am unwilling to adopt the suggestions contained in that case.

The order of the referee is affirmed.

NOTE.—Since preparation and filing of the foregoing memorandum, I observe that the ruling in Re Progressive Wall Paper Corporations, 224 Fed. 143, referred to, has been reversed. See 229 Fed. 489, —— C. C. A. ——.